UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| RICHARD J. ZIETLOW and ) | |
| RENEE J. ZIETLOW, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| ) | Case No. 10-60206 |
| BUDDHA AIR LIMITED, ) | |
| A foreign corporation, ) | Adv. No. 10-6028 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| RICHARD J. ZIETLOW, ) | |
| ) | |
| Defendant. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the Court for trial on an Amended Complaint to Determine the Dischargeability of Debt ("complaint"), filed by the plaintiff, Buddha Air Limited ("Buddha Air"). The Court having heard sworn testimony and arguments of counsel, and having considered the exhibits and record in this case, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The debtor/defendant, Richard Zietlow ("Zietlow"), was the owner and manager of T & J Management, Inc. ("T & J"), a corporation in Georgia that provided aircraft supplies and parts. Buddha Air is a foreign company located in and doing business in Nepal. The complaint alleges that on March 21, 2006, Buddha Air entered into an agreement with T & J for six starter generators. The agreement required T & J to provide

1

plaintiff with six overhauled starter generators and their current EASA approved repair station certification. In exchange, plaintiff agreed to pay T & J $24,349.58, and upon receipt of the generators, to return six (different) starter generators to T & J.[1]

On March 24, 2006, plaintiff wire-transferred $24,349.58 for the generators that were to be shipped on April 7, 2006. Plaintiff did not receive the promised generators. In June 2008, plaintiff filed suit in state court, alleging breach of contract, common law fraud, conversion and unjust enrichment. On July 7, 2009, the state court entered a default judgment against T & J Management, Inc. and Richard Zietlow in the total amount of $38,983.01 (including costs and attorney's fees). Plaintiff issued a citation to discover assets on March 28, 2010, and on April 3, 2010, Zietlow filed a chapter 7 bankruptcy petition.

In the complaint, Buddha Air alleges that its debt is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) & (B) and 523(a)(4). With respect to §§ 523(a)(2)(A) & (B), the complaint alleges that Zietlow falsely represented that (1) he could acquire the generators, or (2) he had acquired them and they were ready to be shipped. Plaintiff alleges that the false representations were made with the intent to deceive plaintiff, and further, that plaintiff relied on the representations when entering into the agreement and making payment. With respect to § 523(a)(4), plaintiff alleges that defendant had a duty to use the $24,349.58 to secure and deliver the six starter generators to plaintiff. According to plaintiff, defendant failed to use the money for that purpose and instead, misappropriated the funds for defendant's own benefit and use.

A pre-trial conference on the amended complaint was held on January 5, 2011 and at that time, the matter was scheduled for trial on May 18, 2011. On January 21, 2011, the Court rescheduled the trial to May 25, 2011. Despite having notice of the trial date, no officers, agents or employees from Buddha Air appeared at

---

[1] In the complaint, plaintiff alleges that a "true and accurate copy of the sales invoice and e-mails" are attached to the complaint, and that those documents "evidence negotiations" between the plaintiff and T & J. Amended Complaint ¶ 7. In his answer, defendant denies that allegation.

the trial. Plaintiff appeared only by counsel, who offered no explanation for plaintiff's absence. The sole witness called by plaintiff's counsel was the defendant, Richard Zietlow. Counsel offered the deposition testimony of an agent of Buddha Air for admission, but the Court ruled that the deposition testimony was hearsay and therefore inadmissible.[2] In addition, the Court ruled that the plaintiff failed to comply with the Court's pretrial order by not including the deposition testimony on the list of plaintiff's exhibits.[3]

In an action brought pursuant to § 523(a) of the Bankruptcy Code, the creditor seeking the determination of nondischargeability bears the burden of proof. *See, e.g., In re Cohen*, 507 F.3d 610, 613 (7th Cir. 2007) (citing *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000)). The creditor must establish this proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by– false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To sustain a cause of action under this section, plaintiff must establish the following elements by a preponderance of the evidence:

(1) the debtor made the representation;

(2) at the time of the representation, the debtor knew it to be false;

(3) the debtor made the representation with the intent and purpose of deceiving the plaintiff;

(4) the plaintiff justifiably relied on the representation; and

---

[2] The agent's deposition was taken by "skype" on May 23, 2011, two days prior to the scheduled trial date and long after the discovery deadline of May 1, 2011. Plaintiff did not request an extension of the discovery deadline. Defendant's counsel received notice of the deposition on May 17th and May 20th.

[3] Paragraph 3 of the pretrial order requires the parties to exchange all exhibits and supply paper copies to the Court at least fourteen days prior to trial. Plaintiff did not seek authority from the Court, by way of a pre-trial motion or otherwise, to add the deposition testimony to its list of exhibits.

    (5) the plaintiff sustained a loss or damage as the proximate consequence of the representation having been made.

4 Collier on Bankruptcy ¶ 523.08[2][a] at 523-47.  The Court finds that plaintiff failed to meet its burden of proving each of the required elements.  Specifically, plaintiff failed to prove that the defendant knowingly made false representations, that those representations were made *with the intent and purpose of deceiving the plaintiff*, and that plaintiff justifiably relied on those representations. There was simply no testimony and no evidence to that effect.  Moreover, defendant's testimony that T & J remained in business for approximately three years after the transactions between plaintiff and T & J took place suggests that there was no intent on the part of the defendant to commit fraud.

    In addition to plaintiff's failure to prove the elements listed above, plaintiff also failed to establish that the debtor/defendant received "money, property, or services" in his individual capacity. *See* 11 U.S.C. § 523(a)(2).  Rather, the evidence showed that the funds were wired to the corporate operating account of T & J Management, Inc.  No evidence was offered to refute that fact.

    Plaintiff likewise failed to sustain its burden of proof under § 523(a)(2)(B), which excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by- use of a statement in writing–

    (i) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

    (iv) that the debtor caused to be made or published with the intent to deceive."

11 U.S.C. § 523(a)(2)(B).  To prevail under this section, a creditor "must prove that the debtor made a materially false written statement about his financial condition with the intent to deceive, and that the creditor

reasonably relied on the statement." *In re Cohen*, 507 F.3d at 613.  At the trial, plaintiff did produce a series of photocopied e-mails between plaintiff and defendant.  The e-mails, however, appeared to have been manufactured and/or cut and pasted together.  For example, some of the e-mails did not include the subject and date lines that are typically included in the "heading" of an email.  In addition, some of the e-mails contained odd lines or marks on the left side – lines that are not normally seen on printed e-mails and lines which suggest that perhaps the e-mails were manually cut and pasted.  Plaintiff did not offer any explanation as to the formatting or odd marks on the e-mails.  In any event, plaintiff failed to prove the required elements for a cause of action under § 523(a)(2)(B).  Plaintiff offered no testimony or evidence proving that any written statement used by defendant was used *with the intent of deceiving plaintiff.* and that plaintiff relied on that statement.

Nor did plaintiff sustain its burden of proving embezzlement under § 523(a)(4).  That section excepts from discharge a debt obtained by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  To prove embezzlement, the plaintiff must show that the debtor (1) appropriated funds for the debtor's own benefit, and (2) did so with fraudulent intent or deceit.  *In re Jacobs*, 403 B.R. 565, 575 (Bankr. N.D. Ill. 2009) (citation omitted).  Plaintiff failed to prove either element.

Accordingly, for the reasons stated, judgment is entered in favor of the defendant and against the plaintiff on the complaint.

See Order entered this date.

ENTERED: June 14, 2011

                              /s/ Laura K. Grandy
                              UNITED STATES BANKRUPTCY JUDGE